Good morning. And may it please the Court, I'm Nicholas Franke. I represent the appellant Norwood-Redfield Apartments Limited Partnership. The issue before the Court today is what the Missouri Supreme Court would determine to constitute a total loss under that state's valued policy statutes. A total loss is a legal term of art, not a lay term. And total loss also does not mean how many properties are damaged, but rather it means how badly the property is damaged. Both parties agree that Respondent insured my client for a total loss in the amount of $31,773,600 under the business owner's policy that was in force at the time of the fire. I assumed in reading the briefs, but I may be wrong, that your client could have insured each of the 32 buildings separately. Your Honor, the insurance company could have valued each of the 32. No, no, no. Could have had a separate policy for each building. I'm not aware of any insurance company that would separately value the buildings in a common development in that way. Well, you say this is, I mean, you say that this lets insurer avoid the statutes by grouping policies for valuation. Correct. But the insured gets to choose, gets a voice in how the policies are structured. I assume if you had more policies for the same number of buildings, the total premiums would be higher. I think that's true as well. That's where I'm coming from. Your client chose to pay less in premiums in order to have a commonly, a single valuation of multiple buildings. Isn't that right? I don't really agree with the court on that. I think that the insurance company and the reason for value policies There's nothing in the record on that. I'm sorry? There's nothing in the record on that. No, Your Honor. There's no events in the record of that. I think the value policy statutes recognize that insurance companies have the greater bargaining power, though. And that's why the statutes exist, is to make sure that insurance companies properly value each property before the policy is written. Now, counsel, the property insured, I don't know that I buy the textual argument. The property insured here is 32 buildings, right? Am I missing something? Well, each of the 32 buildings are insured and required to be valued. Yeah, but it says the property. The is a specific article, and it refers to the property. And so I don't know how you could do it, why the property insured refers to the 32 properties versus the collective. It doesn't say buildings. It doesn't say structures. It says the property insured. Actually, Your Honor, each of the 32 buildings are set out separately in the policy. And when you go to in the record at 99 and look at the definition of the coverage, it says a building, a singular building, is valued at a $31 million number. So I would say that if there's ambiguity in the policy, that has to be construed against the insurance company. So the argument is not so much with the statute, then. The argument is with the specific insurance policy. Well, I don't think that's the case as well. I think there is the argument of the respondent is that we should look at Kansas law, which uses a completely different standard and does have a case from 1912 that says you look at the entire property. Missouri, however, has from 1906 a case called Stevens v. Norwich Union Fire Insurance in which part of the property under the policy was considered a total loss and part of the property under the policy was considered a partial loss. So under your theory, then, suppose that 16 of the 32 buildings were destroyed. So would we then take 16 times $32 million and it would be $480 million? No, Your Honor. The policy limits the insurance company's liability for any loss to $31,773,000. So under your view, then, whether it's one building that gets lost or 32 buildings that get lost, you get $32 million or $31 million, whatever the limit is. Under this policy in which American family decided to group the coverage rather than value each building. That's correct. Now, where is it in the record that the insurance company decided to do the grouping? As opposed, I don't know if your client probably had a broker. Well, Your Honor, there's nothing in the record that says they decided to do the grouping. I don't think you can just calmly or casually, confidently state that this was all the insurance company's fault. I'm not saying that it was their decision to group the buildings, but Missouri valued policy statutes require the parties to agree on a value to the property. And this policy said each building is valued for the $31 million number. It didn't set out separate values for the buildings. And the parties agreed to that blanket number for each building. There's no other amount in the policy that American family could point to and say that's what Building 7 was insured for. This is the only amount. And I think you have to look very closely at the value policy statute policies, which are to stop insurance companies from overvaluing property and charging an increased premium for that. And for that, you want a five times windfall. It's not a windfall. Of course it is. Well, the windfall was actually the insurance company collecting higher premiums because they valued the property in this manner. So they got the windfall. That's not in the record either. It actually is. The policy has a separate premium amount for the blanket coverage. So it is in the record. Why isn't the better reading of the statute or of the policy, the property insured is all 32 and a total loss requires a total loss of all 32? That is not what the statute provides. Total loss doesn't go to how many properties are insured. It goes to how badly the property was damaged. Doesn't that beg the question as to what property means, though? And is that where you'd refer back then to the way the policy describes property? Because the way I read property is very different than yours. Property is used in the generic sense, which is, you know, if I insure 10 paintings, for example, at my home, the property insured is those 10 paintings. It's not necessarily just one painting. That's one view. The other would be that building 7 is the property insured. It has a loss. So if there's ambiguity, again, this has to go against American Family. I did reserve three minutes, and so I'll stop there unless you have any other questions. Thank you. Mr. Martin? This was summary judgment. There's nothing in the record about the negotiating history of this policy? You're absolutely correct, Judge. There's absolutely nothing in the record regarding the formation of the policy. This was a policy of insured, and it's detailed. The entire policy is shown in the record, and the record, the policy begins in the record on page 65 and continues for several hundred pages. And I believe that the last page of the policy in the record is page 184. Mr. Franke, in describing the record and in describing the coverages, I believe misrepresented, probably unintentionally, but misrepresented exactly what the policy says. The policy declarations should not be read one page, page 99, which is what he points to repeatedly in his brief, but should be read in total. The policy declarations begin on page 89, and they conclude on page 99, the page to which he repeatedly cites. Page 89, which is the first page, states in bold print at the very beginning, section one property, coverage provided. Blanket insurance at the following designated premises only for coverages for which a limit of insurance is shown unless coverage is provided by an endorsement. And then the 32 premises follow. On page 99, the page to which Mr. Franke repeatedly refers, excuse me, I skipped over it. Page 99 refers to coverage, the building coverage, and it says that the building coverage is a blanket coverage. And the insurance company is to pay at a replacement cost. So it's not saying that there's only one building that's covered. And in fact, if we go to page 108 of the record, which is the insuring agreement, under section one property, coverage A, one covered property, it then describes the buildings, plural, which are covered. Judge Jackson was confronted with our motion for summary judgment very early on in the case, and she took the motion for summary judgment under submission for quite some time. And the undisputed facts were just what I represented to you. There were 32 buildings covered under the policy of insurance completely set forth in the record. One of those buildings was totally destroyed by fire. Two were damaged. Twenty-nine suffered no damage at all. So the questions that were asked of Mr. Franke regarding what the property insured meant were apt questions. Because the property insured under the building coverage were those 32 buildings, just as shown on the declaration pages 89 through 98. The limit is shown on page 99, the $31.773 million. Now, American Family Insurance has at no time said that all of those 32 buildings were not valued for that amount, the $31.773 million. Rather, American Families' position all along has been that a partial loss does not equal a total loss. And the words in the valued policy statute to which Mr. Franke referred are, you get the policy limits, quote, in case of total loss on the property insured, unquote. The property insured under the building blanket replacement cost coverage were all 32 buildings. Now, where does it say that? I'm looking at that right now. I mean, this is – I know you've got to represent your client, but this isn't the clearest policy either. I mean, you may ultimately be right about the legal question, but it just says building blanket replacement cost, $31,773,600. Your Honor, that's why I began on page 89 of the record, where under section 1 it says the coverage provided blanket insurance at the following described premises, only for coverage for which a limit of insurance is shown unless coverage is provided by endorsement. And then on page 99, which is where you're looking, what does it show? It has the limit, $31.773 million. And then we flip over to page 108, which I described also earlier, that then has the insuring agreement. That's the agreement between Norwood Redfield and American Family that describes what those coverages are. And indeed, there's also a blanket coverage endorsement that says exactly what is coverage. What does it mean by blanket coverage? And that is found on page 148 of the record. So on that page we were just referencing, the building is really a generic reference. It's not to each individual building. As he suggests, it's to distinguish it from, let's say, personal property, which is listed right underneath. Exactly. Those are various kinds of coverages. And it goes from progression. It starts with building. And then I haven't flipped back to it, but then it goes on to other coverages. I believe contents is the next item. And then under that is business income loss. That's another coverage. And then there are additional coverages, which would include the debris removal that was involved in this case, as well as other possible coverages. So those are just types of coverages. And that's why it's singular, not plural. But when you get to the insuring agreement, on the page that I pointed out, I believe is 108 of the record, when you get to the insuring agreement itself there, it talks about buildings, plural. That's why we know that the property insured were all 32 of those buildings. And I see that my time is rapidly running away. So let me get to at least one of the cases that's important. And it's the case to which Mr. Franke referred. And once again, it's important because there the Missouri Court of Appeals in 1906 was confronted with two different kinds of coverages. Building, that's what they took up first, and contents, that's what they took up second. There was a total loss to the building, so plaintiff got the policy limits for that. Then the second coverage is the second part of the case. It's kind of a confusing case to read. It's written in 1906, but that coverage dealt with the contents. And the court held that because there was only a partial loss to the contents, the plaintiff did not get the policy limits. In fact, the plaintiff walked away in that case with zero because plaintiff failed to comply with a condition precedent under the policy of insurance. Because plaintiff did not allow for the appraisal to go forward. Yes, sir. The Stevens versus Norwich Union Fire Insurance Company. And I'm looking and speaking specifically about pages 689 and 690 of that opinion, which I think are very critically important portions of that case. How common is a blanket insurance like this? Very. Okay. Exceedingly common. And I take it this is a standard form that was approved by the insurance commissioner or whatever? It was exactly. And Section 379.160 requires us to submit it to the Department of Insurance. And the Department of Insurance approved this policy. And I would think that this particular circumstance is not uncommon. If you've got an apartment complex with 20 units and one of them gets burnt down, then that's a pretty common occurrence to make a claim under this type of policy. Yes. And that's why this court in the Boardwalk Apartments case to which we cited the state auto versus Boardwalk apartment case, which we discussed in our brief at length. This court following Kansas law, except for the court following Kansas law, it's almost directly on point. In fact, the Sayre Brothers case from the District Court of West Virginia also involved one structure totally damaged by fire and multiple structures not damaged by fire at all. And the court in both of those cases said, hey, one building does not equal a total loss. You don't get the full policy limits. That's what the court said also in the Stevens case. And I see that my time has run out, but our position is clearly set forth in the briefs, I believe. Thank you. Thank you. American family has always steadfastly relied on its policy terms, but the valid policy statutes are a part of every policy in the state of Missouri, and they cannot be circumvented by policy language. Also, the ambiguity is clear when counsel has to come in to explain the policy. This wasn't explained at the onset of insurance. The policy is less than clear on how the coverages work. Now, I think you just said something that's outside the record, that the policy wasn't explained at the time it was issued. Yes, Your Honor. That's true. As was, there was nothing on the record that the policy had been submitted to the Commissioner of Insurance either. But that's absolutely correct. That we can probably take judicial notice of. Really, very briefly with regard to the state auto case. Before you get there, I mean, I understand that you want to attack the cases, but I'm wondering, I asked opposing counsel, this is a common policy. Would you agree with that? I would. Common structure. Common structure. Yes, sir. You know, it had to be approved, etc. So, is there a single case in the country, if this is sort of a common structure, is there a single case in this jurisdiction or in the country that accepts the argument you're making? Can you point me to anything? Absolutely, Your Honor. Stevens v. Norwich Union. Yes, it was real property and personal property, but the importance of the case is not all the property under the policy had to be a total loss. The building was a total loss. The personality was a partial loss. That case has been there since 1906, and the statute has been amended four times since then. The Missouri Supreme Court has opined on this issue numerous times, and it's never been disavowed. I think the reason the state auto case is important to note is that Missouri started as a wholly destroyed jurisdiction, which is what Kansas is. It uses the term wholly destroyed. But in 1894, Missouri went off the wholly destroyed idea and went to the total loss. And Missouri courts have, since that time, determined that it takes less and less and less for a property to be a total loss. While Kansas has held on to the idea that all properties have to be wholly destroyed, which means destroyed down to the ground. And that's just not Missouri law. Missouri law in 1894 went the different direction. And this is all set forth in the Stahlberg case in footnote four in our brief, the whole history of this. But Missouri courts have said foreign law is of no precedent at all. And in fact, this court has rejected state auto outside the state of Kansas in the Buddy Bean case. And I see my time is over. Thank you very much. Thank you, counsel. The case has been well briefed and argued, and we will take it under advisory.